909 So.2d 333 (2005)
Jerry BARKER and Hugh Barker, Petitioners,
v.
James R. BARKER and The J.M.R. Barker Foundation, Respondents.
No. 2D-05-921.
District Court of Appeal of Florida, Second District.
July 6, 2005.
Rehearing Denied August 4, 2005.
*335 Robert W. Goldman of Goldman Felcoski & Stone, P.A., Naples, for Petitioners.
Jack A. Falk, Jr., of Dunwody White & Landon, P.A., Coral Gables, for Respondents.
WALLACE, Judge.
Jerry Barker and Hugh Barker (the Petitioners) seek certiorari review of the circuit court's order denying their objections to discovery and their motions for a protective *336 order. We grant relief in part, quashing the order to the extent that the circuit court required the Petitioners to disclose Hugh's medical records without first safeguarding his privacy interests. In all other respects, the order shall stand.
In 1998, Hugh, then eighty-two years old and without an heir, adopted Jerry, then fifty-eight years old. Hugh had raised Jerry since Jerry was five years old. In 2004, James R. Barker-Hugh's nephew-and The J.M.R. Barker Foundation (the Respondents) filed an action against Jerry and Hugh alleging fraud and seeking to set aside the adoption. The Respondents are contingent beneficiaries of two trusts created by Hugh's father for the benefit of Hugh and his brother, Ralph (now deceased). The terms of the trusts restrict inheritance of trust assets to lineal descendants and to The J.M.R. Barker Foundation. The Respondents alleged that the adoption was a "sham"-a scheme that was concealed from The J.M.R. Barker Foundation and other members of the Barker family and "engineered" by Jerry for the sole purpose of gaining upon Hugh's death an inheritance to which Jerry would not have been otherwise entitled. Answering the complaint, the Petitioners contended that Hugh, having raised Jerry as his child, intended to legalize the relationship so that Jerry would benefit as his heir. Insofar as the record reveals, there is ongoing litigation in Delaware concerning Jerry's rights under the terms of the trusts.
After the circuit court denied the Petitioners' motion to dismiss the action, the Respondents initiated a discovery program that included the taking of Hugh's deposition and the production of his medical records. The Petitioners objected and filed three motions seeking to protect all of the requested items from discovery. Specifically with regard to the request for production of Hugh's medical records, the Petitioners objected on privacy grounds. The Petitioners also objected to the request to depose Hugh because he was not presently competent to sit for deposition due to physical and mental impairments. The Petitioners supported this objection with a letter written by Hugh's treating physician. After a hearing, the circuit court ordered discovery to proceed as requested by the Respondents with minor modifications, including the production of Hugh's medical records from three years before the date of the adoption to the present.[1]
A certiorari petition must pass a three-prong test before an appellate court can grant relief from an erroneous interlocutory order. "A petitioner must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on post-judgment appeal." Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995). The final two prongs of the test are jurisdictional. The appellate court must conduct the jurisdictional analysis before it is empowered to determine whether to grant relief on the merits, i.e., whether the nonfinal order departs from the essential requirements of the law. Id. at 649. Orders requiring disclosure of "cat out of the bag" material that is not subject to discovery by reason of privilege or by other valid reason for nondisclosure are commonly reviewed by certiorari petition because the harm *337 caused by wrongly compelling the petitioner to disclose protected material is irreparable. See Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995).
In the Petitioners' motions, they argued that all discovery should be barred because the Respondents lacked standing to bring the action. According to the Petitioners, if the Respondents had known about the proposed adoption while the adoption proceedings were pending, their interest as contingent beneficiaries of the family trusts would have been too remote to confer standing on them to intervene and challenge the adoption. See Stefanos v. Rivera-Berrios, 673 So.2d 12 (Fla.1996). Thus, the Petitioners argued, the Respondents have no standing to challenge the now-final adoption by an independent action. The Petitioners had raised this argument in their prior motion to dismiss, which the trial court denied. In this certiorari proceeding, the Petitioners contend that the issue of the Respondents' standing must be addressed to prevent the irreparable harm of disclosing material that would otherwise enjoy a protected status.
With regard to Hugh's medical records, the Petitioners' argument against the Respondents' cause of action and their standing to bring it are relevant to the jurisdictional prongs of the certiorari standard. A person's medical records implicate the right to privacy guaranteed by our constitution. State v. Johnson, 814 So.2d 390, 393 (Fla.2002) (citing art. I, 23, Fla. Const.). Court orders compelling discovery of personal medical records constitute state action that may impinge on the constitutional right to privacy. Berkeley v. Eisen, 699 So.2d 789, 790 (Fla. 4th DCA 1997). Arguably, the Petitioners relinquished an expectation of privacy in Hugh's medical records because in defending the action, the Petitioners' placed Hugh's mental and physical health at issue in two respects: Hugh's prior ability to proceed voluntarily with the adoption and his present inability to sit for a deposition. However, this conclusion presupposes the validity of the underlying cause of action. If the Respondents have no standing to bring the action, then compelling disclosure of Hugh's personal medical records in furtherance of the litigation has the potential to cause irreparable harm, leaving no adequate remedy on appeal. Therefore, in exercising our certiorari jurisdiction to review the discovery order, we may consider the Petitioners' arguments challenging the underlying cause of action, notwithstanding the fact that these arguments were raised in a prior motion to dismiss. See Allstate Ins. Co. v. Am. S. Home Ins. Co., 680 So.2d 1114, 1117 (Fla. 1st DCA 1996) (distinguishing Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987), to consider arguments challenging the underlying cause of action on certiorari review of an order compelling production of material that would have been protected by work-product privilege but for the propriety of the cause of action, which had survived a motion to dismiss).
Although we are empowered to consider the Petitioners' arguments on this issue, we cannot say that the circuit court departed from the essential requirements of the law by refusing to bar discovery for the reason advanced by the Petitioners. A departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error. There must be a violation of a clearly established principle of law resulting in a miscarriage of justice. Combs v. State, 436 So.2d 93, 95-96 (Fla. 1983). A decision made according to the form of the law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as applied to the facts, does not rise to the necessary level. *338 Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 525 (Fla.1995).
The circuit court relied on Rickard v. McKesson, 774 So.2d 838 (Fla. 4th DCA 2000), to rule that the Respondents had standing and stated a cause of action for fraud upon the court. Although the Petitioners' arguments in opposition to Rickard are not without merit, they have not cited-nor has our research revealed-"clearly established law" demonstrating the circuit court's departure from the essential requirements of the law. See Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 890 (Fla.2003). Therefore, we decline to quash disclosure of Hugh's medical records for this reason.[2]
Nevertheless, the broad order for production of Hugh's entire medical records from 1995 to the present did not adequately protect Hugh's privacy interests. Discovery in civil cases must be relevant to the subject matter of the case and must be admissible or reasonably calculated to lead to admissible evidence. Langston, 655 So.2d at 94. The Petitioners raised a relevancy objection, and it is entirely conceivable that not all of Hugh's medical records are relevant to the litigation. Although irrelevancy alone does not justify certiorari intervention, such intervention is appropriate when forced disclosure of irrelevant information may cause irreparable harm. Id. When personal medical records are sought, the State's interest in fair and efficient resolution of disputes by allowing broad discovery must be balanced against the individual's competing privacy interests to prevent an undue invasion of privacy. Rasmussen v. S. Fla. Blood Serv., Inc., 500 So.2d 533, 535 (Fla.1987). By failing to provide for an in camera inspection of Hugh's medical records to prevent disclosure of information that is not relevant to the litigation, the discovery order departed from the essential requirements of the law. See Bergmann v. Freda, 829 So.2d 966 (Fla. 4th DCA 2002); Colonial Med. Specialties of S. Fla., Inc. v. United Diagnostic Labs., Inc., 674 So.2d 923 (Fla. 4th DCA 1996). We quash the order in part and remand for such an in camera inspection to safeguard Hugh's privacy interests.
Otherwise, the Petitioners are not entitled to relief. The Respondents sought production of records and other documents related to Hugh's adoption of Jerry. The Petitioners objected on the ground that such disclosure would violate section 63.162, Florida Statutes (2004), which provides that adoption proceedings and the records thereof are confidential and subject to strict rules of disclosure. The Respondents argued that their discovery request was proper because their independent civil fraud action was not an adoption proceeding.
Before the discovery dispute, the circuit court denied the Petitioners' motion to declare the action subject to section 63.162. In a related certiorari proceeding, this court declined to quash the circuit court's refusal to treat the proceeding as an adoption proceeding. Barker v. Barker, No. 2D05-636, 905 So.2d 129 (Fla. 2d DCA May 27, 2005) (table decision). In light of these rulings, the Petitioners have not demonstrated that the circuit court departed *339 from the essential requirements of the law by ordering production of adoption-related documents.[3]
The Respondents also requested "[a]ll estate planning documents signed by Hugh Barker that are in the possession of Jerry Burnett Barker and any correspondence related to those documents." At the hearing, the Respondents stated that Hugh's estate-planning attorney had provided Hugh's entire estate-planning file in the Delaware proceeding. The Respondents wanted to learn if Jerry had any of these same documents in his possession and, if so, when he came into possession of them. According to the Respondents, this information would be probative of Jerry's knowledge of Hugh's estate plan when Jerry allegedly engineered the sham adoption scheme, the object of which was to obtain an inheritance from Hugh upon his death. In short, was Jerry "driving the train here?"
The Petitioners objected, citing Compton v. West Volusia Hospital Authority, 727 So.2d 379 (Fla. 5th DCA 1999), which held that the right to privacy and attorney-client privilege barred discovery of a living person's will. The circuit court ordered the Petitioners to respond to the request, with the proviso that the documents shall be used only for litigation purposes and shall not be disclosed to third parties.
Unsworn statements by the Respondents' attorney at the hearing were the sole evidence that Hugh's estate-planning attorney had previously disclosed the documents in Delaware. However, counsel for the Petitioners did not object. Thus, on review, the Petitioners cannot complain about the trial court's reliance on such statements to find that the requested discovery was relevant. See Blimpie Capital Venture, Inc. v. Palms Plaza Partners, Ltd., 636 So.2d 838, 839 n. 2 (Fla. 2d DCA 1994).
Further, the privacy and privilege concerns expressed in Compton are not present in this case. The Respondents did not request production of Jerry's estate-planning documents, nor did they request Hugh's estate-planning documents personally possessed by him. Rather, they sought Hugh's estate-planning documents that are in Jerry's possession. Jerry does not have a privacy interest in Hugh's estate-planning documents, and Hugh cannot claim attorney-client privilege in material that has been delivered into the hands of a third person. Thus the trial court did not depart from the essential requirements of law by ordering the Petitioners to respond to the request.
With regard to other discovery requests, to the extent that the Respondents requested materials from Hugh's estate-planning attorney, the trial court and the parties agreed that Hugh would have the right to claim work-product privilege or attorney-client privilege for materials to which those privileges applied. The balance of the discovery requests consisted of requests for admissions, interrogatories, and other depositions. The Petitioners have made no showing of irreparable harm arising from responding to these requests.
Petition granted, order quashed in part, and remanded.
ALTENBERND and SILBERMAN, JJ., Concur.
NOTES
[1] We gather that the parties agreed to defer Hugh's deposition pending the taking of his doctor's deposition and the review of Hugh's medical records. Deferring Hugh's deposition would allow the Respondents an opportunity to confirm counsel's representation that Hugh was currently unable to submit to the taking of his deposition.
[2] In so doing, we do not establish law of the case on whether the Respondents have standing or stated a cause of action. See Bevan v. Wanicka, 505 So.2d 1116, 1117 (Fla. 2d DCA 1987); Allen v. City of Miami, 147 So.2d 566, 567 (Fla. 3d DCA 1962) (explaining that declining to issue a writ of certiorari for failure to demonstrate a departure from the essential requirements of the law should not be considered as approving the ruling of the trial judge or establishing law of the case). Nothing in this opinion shall preclude consideration of this issue in further proceedings.
[3] Neither this decision nor the decision in 2D05-636 establishes law of the case with regard to the Petitioners' arguments based on chapter 63. See Bevan, 505 So.2d at 1117.