SAWAYA, J.
 

 Defendants, Black Diamond Properties, Inc. (“Properties, Inc.”), Black Diamond Realty (“Realty, Inc.”), and Stanley C. Olsen, appeal a final judgment based upon a jury verdict awarding damages for misleading advertising to Plaintiffs, Charles and Kathy Haines, Angelo and Brenda Masut, Tom Howell, and Richard Conboy. The issues we will address are whether the misleading advertising claims are barred by the statute of limitations and whether the trial court erred in denying Defendants’ motion for new trial based on erroneous jury instructions.
 
 [1]
 

 This case involves a subdivision, Black Diamond Ranch (“Black Diamond”), and a private golf club, Black Diamond Club (“the Club”), which are located in Lecanto, Florida. The Club includes two golf courses, a clubhouse, and a driving range (“golf courses and facilities”). Olsen, who developed both Black Diamond and the Club, sold lots in Black Diamond through his wholly-owned company, Realty, Inc. Memberships in the Club were marketed as “equity memberships” to those who owned lots in Black Diamond. Despite this marketing ploy, those who purchased memberships actually received a l/750th ownership in a not-for-profit corporation called Black Diamond Club, Inc. (“Club, Inc.”). Club, Inc., in turn, has an option to purchase the golf courses and facilities from Properties, Inc., which is wholly-owned by Olsen. The option is part of the Club Purchase Agreement (“the Agreement”). The nature of the Agreement was a matter of dispute in the lower court proceedings, with Plaintiffs arguing that the Agreement was merely an illusory option since Olsen could prevent the golf courses and facilities from ever being transferred to Club, Inc.
 

 The terms of the Agreement specify that revenues from the sale of memberships and dues paid by members flow through Club, Inc. into Properties, Inc. as nonrefundable option payments and are used to cover the cost of operating the Club. The Agreement further provides that the option is triggered by the sale of the 750th membership in Club, Inc. Club, Inc. can exercise its option at an earlier date only at the discretion of Properties, Inc. Properties, Inc. has complete authority to set the price of memberships, and Olsen has complete discretion to appoint members to the board of directors for Club, Inc.
 

 The premise of this suit is that Olsen and his employees led those who purchased memberships to believe that they were actually getting a fractional ownership interest in the golf courses and facilities, when, in fact, they only received fractional ownership in a not-for-profit corporation that did not own the golf courses or the facilities. This not-for-profit corporation only held an option to purchase the golf courses and facilities at
 
 *1093
 
 some time in the future. That option could only be triggered by the sale of the 750th membership in Club Inc. Olsen held the sole discretion to set the price for those memberships and thereby controlled all future events that could lead to the exercise of that option. In essence, despite the fact that Plaintiffs were sold equity memberships, all they purchased was an interest in a corporation that owned nothing more than an option contract that could only be exercised at the discretion of Olsen, who was the owner of the legal entity that owned the golf courses and facilities. Plaintiffs alleged that the actions of Defendants constituted false and misleading advertising under section 817.41, Florida Statutes (1997).
 

 Defendants argue that Plaintiffs, with the exception of the Haineses, were barred by the applicable statute of limitations found in section 95.11(3)(f), Florida Statutes, which provides for a limitation period of four years for “an action founded on a statutory liability.” § 95.11(3)(f), Fla. Stat. (1997). Plaintiffs purchased their memberships at various times. Charles and Kathy Haines purchased their membership in February 2000. Angelo and Brenda Masut purchased their membership in March 1998. Tom Howell bought his membership in June 1998. Richard Con-boy bought his membership in January 1997. The underlying lawsuit was filed on October 30, 2003, by Tom Howell, Richard Conboy, and Charles Haines. The complaint was subsequently amended to include Kathy Haines and the Masuts. As to all Plaintiffs except the Haineses, it is uncontroverted that the suit was not filed within the four-year limitations period under the statute. Because Defendants concede that the Haineses timely filed their claim under section 817.41, any further discussion regarding the statute of limitations defense will relate to the claims of the other four plaintiffs.
 

 Plaintiffs contend that Defendants are barred from asserting a statute of limitations defense based on equitable estoppel and the continuing tort doctrine. We disagree. Plaintiffs argue that the Defendants are barred from raising a statute of limitations defense under the doctrine of equitable estoppel because they did not disclose to Plaintiffs until sometime in 2001 that Club Inc. did not actually own the golf courses and facilities. Therefore, Plaintiffs assert that they did not know until that time that they had a cause of action for false advertising. Plaintiffs have misinterpreted the doctrine of equitable estoppel.
 

 “The doctrine of equitable estoppel has been recognized and applied in numerous contexts by the supreme court since the inception of statehood.”
 
 See Morsani v. Major League Baseball,
 
 739 So.2d 610, 614 (Fla. 2nd DCA 1999),
 
 approved in part,
 
 790 So.2d 1071 (Fla.2001) (citations omitted). “The doctrine has also been recognized as a valid defense to a limitations-period defense.”
 
 Id.
 
 (citations omitted). However, equitable es-toppel
 
 “presupposes that the plaintiff knows of the facts underlying the cause of action
 
 but delayed filing suit because of the defendant’s conduct.”
 
 See Bell v. Fowler,
 
 99 F.3d 262, 266 n. 2 (8th Cir. 1996) (citing
 
 Dring v. McDonnell Douglas Corp.,
 
 58 F.3d 1323, 1329 (8th Cir. 1995)) (emphasis added). Stated another way,
 
 “[ejquitable estoppel arises where the parties recognize the basis for suit,
 
 but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed.”
 
 Cook v. Deltona Corp.,
 
 753 F.2d 1552, 1563 (11th Cir.1985) (quoting
 
 Aldrich v. McCulloch Props., Inc.,
 
 627 F.2d 1036, 1043 n. 7 (10th Cir.1980)) (emphasis added).
 

 Ryan v. Lobo De Gonzalez,
 
 841 So.2d 510, 518 (Fla. 4th DCA 2003),
 
 quoted in Acous
 
 
 *1094
 

 tic Innovations, Inc. v. Schafer,
 
 976 So.2d 1139, 1144 (Fla. 4th DCA 2008).
 

 The doctrine of equitable estoppel is inapposite given that Plaintiffs do not allege that they knew they had a cause of action, but failed to comply with the statute of limitations because they relied on fraudulent representations made by Defendants that led them to delay filing suit. To the contrary, Plaintiffs argued in the lower court proceedings that they did not comply with the statute of limitations because, until 2001, they did not recognize the basis for their false advertising claims.
 
 [2]
 

 Furthermore, Plaintiffs’ reliance on the continuing tort doctrine to counter the statute of limitations defense is unavailing. “Where the [continuing tort] doctrine applies, a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit.”
 
 Suarez v. City of Tampa,
 
 987 So.2d 681, 685 (Fla. 2d DCA 2008) (citations omitted).
 

 A continuing tort is “established by continual tortious
 
 acts,
 
 not by continual harmful effects from an original, completed act.”
 
 Horvath v. Delida,
 
 213 Mich.App. 620, 540 N.W.2d 760, 763 (1995). “When a defendant’s damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort.”
 
 In re Medical Review Panel for Claim of Moses,
 
 788 So.2d 1173, 1183 (La.2001);
 
 see also Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc.,
 
 21 P.3d 344, 356 (Alaska 2001) (stating that where the defendants were “not exacerbating the contamination that they allegedly caused,” a continuing trespass claim was inappropriate because “the contamination in this case [does not] differ[ ] from the harm ordinarily at issue in cases involving torts of a non-continuing [sic] nature, where discrete wrongful acts often have lasting consequences”).
 

 Id.
 
 at 686 (emphasis in original) (holding that a claim for dumping garbage on the plaintiff’s property was not a continuing tort). In the instant case, the damage-causing act was completed at the time Plaintiffs purchased the memberships in reliance on Defendants’ misrepresentations. Accordingly, the continuing tort doctrine is inapplicable to the facts of this case. We conclude that the section 817.41 claims of Angelo and Brenda Masut, Tom Howell, and Richard Conboy are barred by the statute of limitations.
 

 As to the Haineses, Defendants claim that the jury instruction regarding them section 817.41 claim is erroneous and requires reversal. We agree. Defendants argue that the jury instruction was erroneous because it did not instruct the jury that it had to find that Defendants either knew or should have known the advertisements were false or misleading. In
 
 Joseph v. Liberty National Bank,
 
 873 So.2d 384 (Fla. 5th DCA 2004), this court explained:
 

 Although the statute does not say it, the case law that has developed since the adoption of section 817.41(1) requires one seeking to maintain a civil
 
 *1095
 
 action for violation of the statute to prove each of the elements of common law fraud in the inducement, including reliance and detriment, in order to recover damages.
 

 ... [I]n order to state a cause of action for fraud in the inducement a plaintiff must allege that (a) the repre-sentor made a misrepresentation of a material fact; (b) the representor
 
 knew or should have known
 
 of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation.
 

 Id.
 
 at 388 (emphasis in original) (citations omitted). Thus, the jury instructions given by the trial court subjected Defendants to strict liability on the section 817.41 claims in contravention of
 
 Joseph.
 
 Defendants are entitled to a new trial regarding the section 817.41 claim of the Haineses.
 

 Accordingly, we reverse that part of the final judgment awarding damages to Charles and Kathy Haines, Angelo and Brenda Masut, Tom Howell, and Richard Conboy pursuant to section 817.41. We remand this case to the trial court for a new trial on the Haineses’ section 817.41 claim.
 

 AFFIRMED in part; REVERSED in part; REMANDED.
 

 ORFINGER, C.J. and EVANDER, J., concur.
 

 [1]
 

 . Defendants’ other arguments on appeal are directed to issues involving plaintiffs Lawrence Laukka and Jackson Randolph, in addition to the already named plaintiffs. These arguments are without merit. Accordingly, we affirm all other aspects of the final judgment without further discussion.
 

 [2]
 

 . While Plaintiffs’ argument misses the mark for the doctrine of equitable estoppel, it would be germane to the delayed discovery doctrine. " 'The "delayed discovery” doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action.' ”
 
 Patten v. Winderman,
 
 965 So.2d 1222, 1224 (Fla. 4th DCA 2007) (quoting
 
 Heamdon v. Graham,
 
 767 So.2d 1179, 1184 (Fla.2000)). However, Plaintiffs have expressly disavowed any reliance on the delayed discovery doctrine both in the lower court and on appeal. Accordingly, we will not express an opinion on the applicability of tire delayed discovery doctrine to Plaintiffs’ claim for false advertising.